# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| T.D.M.S., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-24-1269-ALM |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

T.D.M.S.[2] ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1382. (Doc. 1). The Commissioner filed the Administrative Record ("AR") (Doc. 4), and the parties have fully briefed the issues. (Docs. 5, 11).[3] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28

---

[1] Frank Bisignano was sworn in as the Commissioner of the Social Security Administration on May 7, 2025, and is therefore substituted as Defendant in this matter, pursuant to Federal Rule of Civil Procedure 25(d).

[2] For privacy purposes in light of the sensitive information disclosed in Social Security cases, the Court refers to Plaintiff by initials only.

[3] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

U.S.C. § 636(c)(1). (Docs. 9, 10). Based on the Court's review of the record and issue presented, the Court **AFFIRMS** the Commissioner's decision.

I.      **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921; *see id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-

51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[4] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

 This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r,*

---

[4] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

*SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

## II.  Procedural History

Plaintiff filed applications for DIB and SSI on August 2, 2022, alleging a disability onset date of May 12, 2021. (AR, at 17, 72, 82, 92-93, 251, 258). The SSA denied the applications initially on January 4, 2023, and at reconsideration on June 20, 2023. (*Id*. at 116-126, 140-42, 144-46, 148-50, 152-54). An administrative hearing was held on March,

14, 2024. (*Id*. at 44-71). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 17- 37). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

### III.   The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 12, 2021, the alleged onset date. (AR, at 20). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of cervical spondylosis and stenosis, lumbar spondylosis and degeneration, polyarthralgia, trochanteric bursitis of both hips, calcaneal spurs of the bilateral feet, osteoarthritis of the knees, venous insufficiency, rotator cuff tendinitis of the right shoulder, chronic pain syndrome, plantar fasciitis, fibromatosis, carpal tunnel syndrome, intractable headaches, depression, and anxiety. (*Id*.) At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments. (*Id.* at 21-22). The ALJ then determined that Plaintiff had the RFC to:

> perform light work…with standing and/or walking for a total of six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday, except she can occasionally push, pull, and operate foot controls with the bilateral lower extremities; occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, and ladders, ropes, and scaffolds; frequently handle and finger; frequently reach, including overhead; must avoid concentrated exposure, no more than frequently, to vibrations and hazards including moving mechanical parts and unprotected heights; understand, remember, and carryout only simple instructions; maintain attention and concentration for no longer than two-hour blocks; occasionally interact with supervisors,

co-workers, and the general public; and use judgment to make only simple work-related decisions.

(*Id.* at 24). Then, at Step Four, the ALJ found Plaintiff could not perform any past relevant work. (*Id.* at 35). At Step Five, however, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy, such as mail room clerk and maid/housekeeping cleaner. (*Id.* at 36). Thus, the ALJ found that Claimant had not been under a disability since May 12, 2021. (*Id.* at 37).

## IV.  Claim Presented for Judicial Review

Plaintiff contends the ALJ erred by failing to properly analyze Dr. Bryan Cain's medical opinion resulting in an erroneous RFC. (Doc. 5, at 4-10). Plaintiff further contends the RFC error led to flawed hypotheticals posed to the vocational expert ("VE"). (*Id.* at 10-12).

The Commissioner argues that the ALJ reasonably considered Dr. Cain's restrictions as intermittent and temporary. (Doc. 11, at 1, 5-8). Therefore, the Commissioner argues, viewing the record as a whole, the RFC is supported by substantial evidence. (*Id.* at 8).

The Court finds the ALJ did not err in his formulation of the RFC.

## V.  The ALJ's Formulation of the RFC is Supported by Substantial Evidence.

Plaintiff argues that the ALJ committed harmful error when he failed to properly analyze Dr. Cain's post-surgical restrictions limiting Plaintiff to only 15 minutes of standing or walking per hour as well as a recommendation to wear prescribed shoe gear. Plaintiff contends that this failure resulted in a less restrictive RFC than was otherwise

appropriate. Plaintiff also highlights for the Court that she continued to report significant pain nearly a year after the surgeries. (Doc. 5, at 7). For the reasons stated below, these arguments do not require reversal.

### A.     The ALJ's Duties in Evaluating Medical Opinions

An ALJ is required to evaluate the persuasiveness of every medical opinion and prior administrative medical finding of record. *See* 20 C.F.R. §§ 404.1520c(b); 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions. *Id.* §§ 404.1513(a)(2); 416.913(a)(2). However, not every statement from a medical source is a medical opinion which requires analysis by the ALJ. For example, statements regarding prescribed treatments and recommendations are not medical opinions. *Id.* §§ 404.1513(a)(3); 416.913(a)(3). And a medical source that identifies impairment related limitations, but not what the claimant can still do despite those impairments, is not a medical opinion. *Staheli*, 84 F.4th at 906 n.2.

### B.     The ALJ's Consideration of Dr. Cain's Treatment Plan and Post-Surgery Recommendations Does Not Require Reversal.

Dr. Cain performed three surgeries on Plaintiff's feet, on July 13, 2022; October 26, 2022; and May 3, 2023. As part of the post-operative plans, Dr. Cain limited Plaintiff to 15 minutes of ambulation or standing per hour. (*See, e.g.*, AR, at 1825, 1841, 1897). The

ALJ recited each of these plans in his summary of the evidence. (*Id.* at 28-31). While the ALJ did not articulate how persuasive he found the post-operative limitations, the undersigned finds the failure to do so was – at most – harmless error.

A plain reading of the medical records reflects that the ambulation limitations are clearly confined to the post-operative period. For instance, none of the standing/walking limitations are included in Dr. Cain's plan during Plaintiff's assessment exams. (*See id.* at 1791-1819, exams between August 2017 and June 2022 did not include standing/walking limitations in the treatment plans); (*id.* at 1834-36, exam on October 10, 2022; same); (*id.* at 1848-53, exams April 2023; same). In contrast, the treatment plans for the exams after each of Plaintiff's three surgeries, noted as post-operative exams, include standing/walking limitations. (*See id.* at 1824-31, post-operative exams between July 2022 and August 2022); (*id.* at 1840-47, post-operative exams between October 2022 and December 2022); (*id.* at 1896-1901, post-operative exams between May 2023 and June 2023). (*But see id.* at 1832-33, post-operative exam dropping limitations); (*id.* at 1902-03, post-operative exam dropping limitations). According to the records, the total post-surgical standing/walking limitations were recommended for approximately six months between July 2022 (after the first surgery) and October 2023 (final exam records from Dr. Cain). (*See generally id.* at 1784-1853, 1981-1909, Dr. Cain's exam notes generally). Thus, the post-operative standing/walking limitations were temporary for the purposes of surgical recovery, lasted less than twelve months, and did not describe both physical limitations and what Plaintiff could still do despite the impairments in her feet – i.e., not a medical opinion that must be analyzed for persuasiveness.

8

Although the ALJ did not specifically address Dr. Cain's prescribed limitations beyond including the records in summary, any error in that regard is harmless. The ALJ's summary of Dr. Cain's records indicates that he understood the temporary nature of the restrictions. (*See e.g.* AR at 31, noting with regard to summary of exam on June 5, 2023, "standing and ambulatory limitations remained" and with regard to summary of exam June 19, 2023, "no standing limitations were provided"). To the extent failing to consider the persuasiveness of temporary restrictions amounts to error, it is harmless. *See, e.g., Rutledge v. O'Malley*, 2024 WL 4213585, at *3 (M.D. Ala. Sept. 17, 2024) ("[C]ourts consistently find that an ALJ's failure to address temporary work restrictions imposed by a physician is harmless error because of the temporary nature of the work restriction.") (collecting cases).

Plaintiff also contends that the ALJ "divined his own medical opinion because there is no opinion listed as persuasive as to the physical nature of [her] limitations." (Doc. 5, at 10). However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("[E]xact correspondence between a medical opinion and the . . . RFC is not required."). Instead, the RFC determination need only include such limitations as the medical record substantially supports. *See Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) ("The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence.").

Here, the RFC was determined after the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR § 404.1529 and 416.929 and SSR 16-3p." (AR, at 24). The decision then goes on to summarize Plaintiff's medical records, including multiple exams and orders by Dr. Cain. (*Id.* at 25-33). So, the ALJ did not "play[] doctor" as Plaintiff suggests. (Doc. 5, at 10).

As for Plaintiff's argument that the ambulatory limitations should have been included in the RFC because Plaintiff was still experiencing significant pain, (*id.* at 7), the ALJ noted Plaintiff's testimony that she could only "stand up to 15 minutes" and "walk less than one block." (AR, at 25). The ALJ found Plaintiff's "statements about intensity, persistence, and limiting effects of her symptoms [to be] inconsistent" with the medical records. (*Id.* at 33). As the Commissioner argues, the Court can trace the ALJ's reasoning that the post-operative restrictions were temporary and intermittent based on the extensive summary of the records included in his decision. *See Nielsen v. Comm'r*, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) ("[T]he articulation requirements in [§§ 404.1520c, 416.920c] will allow a subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review our final decision.")

For all of the foregoing reasons, the ALJ's omission of the standing/walking limitations from the RFC is supported by substantial evidence. Because the ALJ did not commit reversible error, the decision should be affirmed.[5]

## VI. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the Court **AFFIRMS** the decision of the Commissioner.

**IT SO ORDERED** this 20th day of November, 2025.

_Amanda L. Maxfield_
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff also argues that the ALJ erred at Step Five by failing to include "all of the limitations borne out by the evidentiary record." (Doc. 5, at 10). But this argument relies on a finding that the ALJ committed reversible error by failing to address the temporary, post-operative findings of Dr. Cain. Because the ALJ did not commit reversible error in that regard, the Court finds no error at Step Five.